UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHRIS JOSEPH BOURGEOIS                CIVIL ACTION

VERSUS

LBC OF BATON ROUGE, LLC           NO.: 3:13-cv-00160-BAJ-SCR

## RULING, ORDER & JUDGMENT

Before the Court is Defendant LBC Baton Rouge, LLC's ("LBC") **MOTION FOR SUMMARY JUDGMENT (Doc. 15).** LBC asserts that it "is entitled to summary judgment on all of [Plaintiff's] claims because there are no genuine issues of material fact in dispute, and the undisputed facts show that LBC is entitled to judgment in its favor as a matter of law." (*Id.* at p. 1). Plaintiff Chris Bourgeois ("Bourgeois") opposes LBC's motion. (Doc. 18). LBC has been allowed to reply to Bourgeois's opposition. (Doc. 19; Doc. 26). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. BACKGROUND

On March 13, 2013, Bourgeois sued LBC—his former employer—seeking damages and other relief for various alleged violations of federal and state law. (Doc. 1). In sum, Bourgeois claims that he was unlawfully terminated from his Senior Operator position on the basis of his race (white) and/or his age (52 years). (Doc. 3 at ¶¶ 9–10). Specifically, Bourgeois asserts that his termination violated: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"); (2) the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 623, *et seq.* ("ADEA");

Jury

and (3) the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.* ("LEDL"). (*See* Doc. 1 at ¶¶ 9–10; Doc. 18 at p. 1).

The parties agree on the following facts[1]: Bourgeois, a 52-year-old white male, began his employment with LBC in March 1989 as an Operator.[2] (*See* Doc. 18-2 at ¶¶ 1 (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts)). In March 1994, Bourgeois was promoted to Senior Operator. (*Id.* at ¶ 2). Beginning in 2005 until his termination, Bourgeois reported to Operations Supervisor Tony Medine. (*Id.* at ¶ 3).

On June 29, 2011, while working the day shift, Bourgeois suffered a chemical burn to his arm caused by rubbing against a hose coated in caustic. (*Id.* at ¶ 12; Doc. 15-4 at p. 4 (Bourgeois Deposition, Oct. 2, 2013)). Bourgeois received treatment for this injury and was released the same day, with no restrictions. (Doc. 18-2 at ¶ 13; Doc. 15-4 at p. 5).

On June 30, 2011, Bourgeois was no longer experiencing any pain in his arm from the injury. (Doc. 18-2 at ¶ 14). Bourgeois stopped by the LBC terminal to pick up his paycheck and, while there, placed a note on Tony Medine's desk, requesting to take off July 1, 2, and 3—the three days immediately preceding the July 4

---

[1] The Court draws these facts primarily from Bourgeois's admissions in his RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS (Doc. 18-2). When necessary—and, in particular, when Bourgeois indicates that certain facts are "contested" (*e.g.*, Doc. 18-2 at ¶ 12)—the Court cites Bourgeois's October 2, 2013 deposition testimony (Doc. 15-4 at pp. 2–12).

[2] Although not entirely clear from the record, it appears that Bourgeois performed pipe-fitting work for LBC. (*See* Doc. 15-4 at p. 3).

2

holiday. (Doc. 18-2 at ¶¶ 19–20, 22; Doc. 15-4 at pp. 6, 8). Medine discovered Bourgeois's note later that day, when he returned from the field. (Doc. 18-2 at ¶ 22). At the time, LBC's Louisiana terminal was "unusually busy" and—due to employee resignations, and holiday and vacation schedules—"very short-staffed." (Doc. 18-2 at ¶¶ 6–7). Thus, upon finding Bourgeois's note, Medine called Bourgeois and informed him that he was denying Bourgeois's eleventh-hour vacation request. (*See* Doc. 18-2 at ¶ 23; Doc. 15-4 at p. 6). Further, Medine informed Bourgeois that he was scheduled to work the night shift that day (June 30). (Doc. 18-2 at ¶ 23; Doc. 15-4 at p. 8). Medine asked Bourgeois if Bourgeois "was coming in." (Doc. 15-4 at p. 8). Bourgeois told Medine "[he] was not." (*Id.*). Medine then told Bourgeois that if he did not come to work, his "job may be in jeopardy," to which Bourgeois responded "[y]ou do what you need to do; I'll do the same." (Doc. 18-2 at ¶¶ 25–26).

Bourgeois did *not* report for the night shift on June 30. (*See* Doc. 18-2 at ¶¶ 30–31; *see also* Doc. 18-1 at p. 2). However, Bourgeois *did* report for his shift on July 1, 2011. (Doc. 18-2 at ¶ 30). When he arrived at the LBC terminal, Bourgeois was denied entry and informed that he had been fired. (*See* Doc. 18-2 at ¶¶ 32–33; Doc. 15-4 at p. 12). Bourgeois alleges that his termination resulted from a "knee jerk decision [to] fire [him] because [of] his age and race." (Doc. 18-2 at ¶ 32; *see also* Doc. 3 at ¶¶ 9–10). For its part, LBC asserts that Bourgeois was terminated for "insubordination and job abandonment." (Doc. 18-2 at ¶ 32).

3

Discovery has ended, (*see* Doc. 12), and LBC now seeks summary judgment on each of Bourgeois's various claims. (Doc. 15). LBC asserts: (1) "Bourgeois'[s] state-law age discrimination claim is barred by the applicable prescriptive period," (Doc. 15-1 at p. 8); (2) Bourgeois has failed to establish a prima facie case of race discrimination under Title VII, (*id.* at p. 10); and, in any event, (3) Bourgeois's race discrimination claim under Title VII *and* his age discrimination claim under the ADA each fail because Bourgeois "cannot rebut LBC's legitimate, nondiscriminatory reason for terminating him," (*id.* at pp. 13, 16). Bourgeois opposes LBC's motion, arguing that "has established a tangible employment action." (Doc. 18 p. 1). The Court will consider the viability of each of Bourgeois's claims in turn.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable

to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. LAW AND DISCUSSION

#### a. Timeliness of Bourgeois's LEDL age-discrimination Claim

LBC asserts that Bourgeois's age-discrimination claim under the LEDL is prescribed.[3] (Doc. 15-1 at pp. 8–9). Discrimination claims brought under Louisiana law are subject to a one-year prescriptive period. La. R.S. 23:303(D). "This one-year prescriptive period commences to run from the day injury or damage is sustained." *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 187 (La. 1999). The one-year prescriptive period for LEDL claims is suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal

---

[3] Although not stated in so many words, it appears from Bourgeois's response to LBC's Motion for Summary Judgment that Bourgeois *concedes* that his LEDL claim is prescribed. (*See* Doc. 18 (asserting that "Plaintiff was terminated under the ADA [sic] and Title VII," but failing to allege discrimination under the LEDL; *see also* Doc. 18-1 (failing to discuss the issue of prescription)). In any event, for reasons explained below, the Court finds that Bourgeois's LEDL claim is, indeed, prescribed.

5

Employment Opportunity Commission, but no such suspension "shall last longer than six months." La. R.S. 23:303(D).[4]

Here, the one-year prescriptive period on Bourgeois's age discrimination claim began to run on July 1, 2011, when Bourgeois learned of his termination. Bourgeois's *maximum* eighteen-month prescriptive period (consisting of the one-year prescriptive period, plus the maximum six-month suspension period) ended on Tuesday, January 1, 2013. Bourgeois did not file his lawsuit until March 13, 2013, more than two months *after* the prescriptive period ended. (Doc. 1). Thus, Bourgeois's LEDL claim is prescribed and must be dismissed. La. R.S. 23:303(D).

### b. Bourgeois's Title VII Claim

#### i. *Bourgeois's prima facie burden*

Bourgeois alleges that his termination from LBC was the result of unlawful discrimination on the basis of his race. (Doc. 3 at ¶ 9). Title VII prohibits an employer from discharging or otherwise discriminating against "any individuals . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Bourgeois has failed to produce any direct evidence of discrimination in support of his Title VII claim, the Court proceeds according to the burden-shifting framework established by the U.S. Supreme Court in *McDonnell*

---

[4] In its entirety, La. R.S. 23:303(D) reads: "Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months."

6

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012).

"The first step of the *McDonnell Douglas* analysis requires the plaintiff to establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Turner*, 675 F.3d at 892 (quotation marks and alterations omitted). If the plaintiff establishes a prima facie case, the Court proceeds to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Id.* (quotation marks omitted). If the defendant meets its burden of production, "the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Id.* (quotation marks and alterations omitted).

To show a prima facie case of discriminatory discharge, a plaintiff must establish:

> "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Here, LBC concedes for the sake of argument that Bourgeois has satisfied the first three elements of his prima facie case. Nonetheless, LBC asserts that "Bourgeois cannot meet his *prima facie* burden because he cannot identify any

7

similarly-situated person who was treated differently." (Doc. 15-1 at p. 11). The Court agrees. As a comparator, Bourgeois offers Kevin Brock, a "black employee [who] was allowed to miss scheduled work and was not fired." (Doc. 18-1 at pp. 4–5). By his own admission, however, Brock's circumstances were quite different than those at issue here. Whereas Bourgeois *refused* to report to work after receiving a call from Medine, Brock "didn't show up for work in the morning, didn't call in," but then *reported* for work within 30 minutes of his scheduled shift after receiving a call from his supervisor. (Doc. 15-4 at p. 4). Further, Bourgeois stated that the incident involving Brock occurred in 1995, more than 15 years prior to Bourgeois's termination. The Court has little trouble determining that Brock's situation was different in kind, and too far removed, to provide a valid comparator to Bourgeois's situation. *See Lee*, 574 F.3d at 259 ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.").[5]

Thus, having failed to produce any evidence that "he was treated less favorably because of his membership in that protected class than were other *similarly situated employees* who were not members of the protected class, under

---

[5] Although not referenced in his response to LBC's Motion for Summary Judgment, Bourgeois identified an additional comparator in his deposition. Bourgeois stated that Jared Beckwith failed to report for work on one occasion because "he was out of town." (Doc. 15-4 at p. 8). According to Bourgeois, this incident occurred "[p]robably ten [years]" ago. (*Id.* at p. 9). As with Kevin Brock, the Court determines that Beckwith's situation was different in kind, and too far removed, to provide a valid comparator. *See Lee*, 574 F.3d at 259.

nearly identical circumstances," Bourgeois has not met his *prima facie* burden and his Title VII claim must be dismissed. *Lee*, 574 F.3d 259 (emphasis added).

      *ii. LBC's proffered nondiscriminatory reason for terminating Bourgeois*

Even if the Court *assumes* that Bourgeois has met his prima facie burden, Bourgeois's Title VII claim *still* fails because he cannot rebut LBC's proffered nondiscriminatory reason for firing him. Here, LBC has produced evidence that it fired Bourgeois "[d]ue to failure to report to work on Thursday, June 30, 2011, [Bourgeois's] scheduled 'overtime' day." (Doc. 15-3 at p. 11). LBC's evidence is more than sufficient to carry its burden of production. *Cf. Miller v. Texas State Bd. of Barber Examiners*, 615 F.2d 650, 652 (5th Cir. 1980) (affirming district court's determination that employee's refusal to report to work as instructed by his supervisor was a legitimate, nondiscriminatory reason for termination).

Accordingly, the burden shifts back to the Bourgeois to show that LBC's "proffered reasons were a pretext for discrimination." *Turner*, 675 F.3d at 892 (quotation marks and alterations omitted). Although not entirely clear, Bourgeois's argument seems to be that LBC's proffered reason for firing him is "pretextual" because: (1) Bourgeois was fired on "a scheduled day off" (*See* Doc. 18-1 at p. 5); and (2) accepting as true that LBC was busy and understaffed in June 2011, it was illogical to fire Bourgeois—thereby compounding the situation—*unless* discrimination was the motivating factor. (*See id.* ("They were so busy they had to

9

have all hands on deck, so they fired a 22 year veteran leaving a massive gap in the schedule.")).

The Court is not persuaded by Bourgeois's reasoning. First, Bourgeois's claim that he was not scheduled to work on June 30 is contradicted by his own deposition testimony, where he conceded: (1) it was LBC policy at the time Bourgeois was fired to have "at least five employees on each shift, no exceptions," (Doc. 18-2 at ¶ 9; *see* Doc. 15-4 at p. 7); (2) this policy "meant that employees who were 'on call' for a shift were expected to report to work for that shift, without waiting for a call," (Doc. 1802 at ¶ 10; Doc. 15-4 at p. 5–6); (3) supervisors would frequently "sign anybody up [for on-call shifts], whoever was off," (Doc. 15-4 at pp. 5–6); (4) "[s]omeone may have signed [Bourgeois's] name on [the on-call schedule for June 30]," (*id.* at p. 6); and (5) when told by Medine over-the-phone that he was scheduled to work on June 30, Bourgeois stated that he was not coming in, despite the possibility of adverse employment consequences, (*id.* at p. 5). Thereafter, Bourgeois held firm, refusing to report for his June 30 shift.

In sum, Bourgeois's *own* testimony establishes that he was well-aware of the possibility that he could be signed up for a shift at any time; that he knew he was scheduled to work on June 30 because Medine told him so; and that he thereafter refused to report. In these circumstances, the Court cannot agree with Bourgeois's assertion that LBC's proffered reason for his termination is pretext because he was fired on "a scheduled day off." (*See* Doc. 18-1 at p. 5).

10

Second, even if true that it was illogical to fire Bourgeois in light of LBC's workload and staffing problems, LBC is correct to note that "Bourgeois cannot show pretext by questioning the wisdom of the termination decision." (Doc. 19 at p. 5). Fifth Circuit law is well-settled that "discrimination laws [are not] vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997).

Thus, Bourgeois's Title VII claim must be dismissed because Bourgeois has also failed to rebut LBC's proffered nondiscriminatory reason for firing him.

### c. Bourgeois's ADEA Claim

Finally, Bourgeois alleges that he was terminated on the basis of his age in violation of the ADEA. (*See* Doc. 3 at ¶ 10). As before, Bourgeois has not produced any direct evidence of age discrimination and, thus, the Court applies the *McDonnell Douglas* framework to his allegations under the ADEA. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

To establish a prima facie case that he was fired in violation of the ADEA, Bourgeois must show: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson*, 602 F.3d at 378.

Other than his own self-serving deposition testimony, Bourgeois has not directed the Court's attention to any evidence indicating that he was replaced by

someone outside his protected class, replaced by someone younger, or otherwise discharged because of his age. *See id.* To repeat, "unsubstantiated assertions" are insufficient to carry Bourgeois's burden of showing a genuine dispute of material fact. *See Little*, 37 F.3d 1075. And, as before, even if the Court *assumes* that Bourgeois has carried his burden, he has failed to show that LBC's proffered reason for firing him was mere pretext for discrimination. *See Jackson*, 602 F.3d at 378. Thus, Bourgeois's ADEA claim must also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that LBC's **MOTION FOR SUMMARY JUDGMENT (Doc. 15)** is **GRANTED**. Bourgeois's claims against LBC are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that judgment be entered in favor of LBC and against Bourgeois.

Baton Rouge, Louisiana, this 20th day of August, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

12